The first is number 21-642 Bibliotechnical Athenaeum v. American University of Beirut. Mr. Abrams. Good morning, Your Honor. Thank you for hearing me. I asked for oral argument. I wanted to hopefully emphasize to the court that a useful way to think about discrimination is in terms of perception, and through that lens, I would submit that what's happened in this case would clearly qualify, no matter what box you try to put the plaintiff in. I didn't really have anything more to say to that. If you have any questions for me, great. If not, I'm ready to stand on my papers. Mr. Abrams, your national origin discrimination claim seems to be based on Bibliotechnical's country of incorporation, and not the national origin of its owners, directors, customers, or what have you, because you're pleading, your complaint is really quite bare bones. And I'm not seeing any precedent in our circuit that suggests a discrimination claim can lie based on a company's country of incorporation. What can you point me to? Well, on that specific issue, are we talking about just national origin, or are we talking about the Civil Rights Act as well, Your Honor? We're talking about national origin. In terms of national origin, I'm not aware of anything in this circuit on that issue, which says that the state of a country of incorporation would qualify as a national origin analysis. But again, in my view, what matters is perception. But why is perception actually the standard? You have to plead facts that give rise to a plausible inference of discrimination on a protected basis under Title VI or under 1981. What have you done that gives rise to such an inference? Well, I would submit that certainly the facts would show that the defendant cut contact with the plaintiff on the fact that it was, quote, Israeli. I'm sorry, I'm not understanding what you said. The defendant contacted the defendant? I said that the defendant cut contact with the plaintiff. In other words, the plaintiff was placing a job ad and trying to participate in a seminar, excuse me, in a job fair. And immediately upon learning that the plaintiff is Israeli, the defendant cut contact, and that was the end. Nothing ever went further. So in terms of the underlying facts, I would submit there's plenty of facts to plausibly infer that. There's one fact, right, Mr. Abrams? You're saying that the fact that communication ceased after you wrote that your entity was incorporated in Israel, is that a problem, that that ended the email exchange, that that is enough to plausibly state a discrimination claim based on what? Well, it actually, the email said it's Israeli. It didn't say Israeli incorporated. And I would also say the defendants in their own papers said that we can't do business with Israeli companies. So between those two facts, I would submit it's reasonable to infer that there was some kind of discrimination. So then the next question, which I think is kind of the main question your honor is getting at is, well, should we see that as national origin discrimination? Do I understand your honor correctly? Yeah, I'm looking for national origin discrimination. And Hudson Valley looked for far more factual allegations regarding the membership of the corporation, its executive control, its customers, and so on. It was more fact heavy than anything you've alleged in your complaint. Right. So your honor, again, that's what brings me back to perception. I would say that there was a perception clearly that the plaintiff was Israeli and whether that means the plaintiff had Israeli ownership or officers or so forth, it never even reached that point in the discussion. Things ended right there. So are you rejecting the understanding that the critical fact in your complaint is the incorporation of your corporation in Israel? Are you suggesting that the complaint supports some other inference of some other basis for the discrimination besides the locale of incorporation? Are you accepting that as the gravamen of your claim? I would say it's a combination of that and the perception that it is. But yeah, primarily that it's Israeli registered. Yes, your honor. I think I'm out of time. So if you have any more questions, maybe we can get those in rebuttal. We'll hear from Ms. Williams. Good morning. May I please record? This is Catherine Williams of Patterson, Belknap, Webb, and Tyler, LLP. On behalf of the appellee, American University of Beirut, or AUB. AUB respectfully requests that the court affirm dismissal of the complaint and the amended complaint, both of which failed to state a claim for the reasons that were just being discussed. As the court below correctly found, the issue here is that under Title VI and Section 1981, a corporation cannot state a claim for national origin or citizenship discrimination based primarily on its country of incorporation. And that is all that Bibliotechnical has tried to do here. Mr. Abrams referenced this idea of perception, but there's actually no allegation in the complaint regarding AUB's supposed perception of Bibliotechnical. The only allegation is that Bibliotechnical is an Israeli corporation, but that is what Mr. Abrams told AUB. Because there is no claim under federal civil rights law based on a country's, I'm sorry, based on a company's country of incorporation, Bibliotechnical's complaint and amended complaint were properly dismissed. Ms. Williams, Mr. Abrams points not only to the country of incorporation, but also the end of the communications. The fact that some of its papers are written in Hebrew, and I think Mr. Abrams just averted to some material on AUB's website about its inability to conduct certain transactions with entities formed in Israel or to place its students in Israel, I guess. Why isn't that enough to sustain a claim under 1981, for example, if not Title VI? So all Mr. Abrams has alleged here is that after AUB questioned him by email and invited him to have a call about his company's proposed job posting, he responded not by accepting that invitation, but by saying, hey, Bibliotechnical is an Israeli company. Is that going to be a problem? And that communications stopped. So that's very different from the situations where facts are alleged from which either a national origin or citizenship for purposes of Section 1981 can be imputed to the corporation. There are actually no cases, I think, as Your Honor recognized, where an imputed national origin claim has been brought. But in Hudson Valley Theater, where the issue of imputed racial identity was considered, there was much more. So there were facts alleging that there was an understanding there of the company's mission being to, you know, promote certain interests of the Black and Hispanic communities in the Hudson Valley. And that was the basis for allowing a race discrimination to proceed. There is no such allegation here that AUB had any understanding of a particular mission by Bibliotechnical that would give Bibliotechnical some kind of protected status. Why isn't enough, I mean, there are emails in the record here in which AUB is saying, oh, we're ready to sign you up. We're ready to sign you up. You know, just we'll make sure this happens. And then immediately after Mr. Abrams communicates that his is an Israeli corporation that is incorporated in Israel, communication stops altogether. Why isn't that enough, that proximity and timing from us to state a plausible claim of national origin discrimination? Because you would still have to find, Your Honor, that there were facts supporting the conclusion that AUB was discriminating on the basis of the Israeli national origin or understood the owners or employees or some people affiliated with the corporation to have Israeli national origin and was discriminating on that basis. There are no such facts here. I think as Judge Lyman correctly found in his opinion below, it's not reasonable to infer anything about the owners of a corporation, about the purpose of a corporation based on the location where it incorporated, because there are so many reasons why companies might choose to incorporate in a particular location. And that's really why no inference can be drawn here from the timing, Your Honor. And what about his proposed 1981 claim? With respect to his proposed 1981 claim based on alienage, again, there would still need to be facts, I think, from which some kind of discrimination against people affiliated with the organization, bibliotechnical could be inferred. I think there is no case law supporting the idea that alienage in the context of Section 1981 means country of incorporation. And if you look at the purpose of Section 1981, as this court explained in the Anderson versus Convoy decision, it's really to protect individuals from laws or policies that discriminate against individuals who aren't citizens of the United States in favor of people who are citizens of the United States. That's the purpose of Section 1981. That is not the type of discrimination that Mr. Abrams has alleged here. Thank you. If there are no further questions, I would like to briefly touch on the alternative grounds for dismissal, which is available to this court, because I think it does go to one of the facts that Your Honor asked about, which is AUB's ability to conduct certain transactions. If the court were to find that a claim had been stated, either under Title VI or Section 1981, there would still be the question of whether those laws could be applied to the conduct at issue here because of the presumption against extraterritorial application of the law. In this case, AUB would be put in the position of having to comply with two inconsistent laws if the court were to extend the reach of the statutes, because it is the case that the law of Lebanon imposes criminal and civil penalties for doing business with Israeli organizations, just as U.S. law prohibits U.S. entities from doing business with residents and companies of certain countries, such as Syria. And this court, the Supreme Court, have recognized that anti-discrimination laws should not be abroad, where it would create a conflict with the law of that country. The U.S. Department of Education here, in its own interpretation of Title VI, in the Program Participation Agreement it entered into with AUB, expressly said that Title VI only applies to the extent not prohibited by law of AUB's home country, Lebanon. That is an issue that Mr. Abrams has not addressed and has no answer for, and it is an extremely difficult issue, and I'm not sure that all of his claims was appropriate. Thank you very much. Oh, go ahead, Robby. I'll just briefly follow up on that. So I thought one of the arguments was the harm was felt here in the U.S. that while the Corporation is incorporated in Israel, it's sort of based here. Is that enough to sort of shield against the extraterritoriality argument because the plaintiff was in the U.S.? The only connection to the U.S. is that the plaintiff has a New York address. So in its papers, you know, with the New York Secretary of State, Mr. Abrams put down the address of his law office, which is in New York. That's the only connection to the U.S. here, and that is not enough, Your Honor, to create the type of nexus to the U.S. that would support the application of these laws in this case. Thank you. Thank you very much. We'll hear rebuttal. Thank you, Your Honor. So I'll briefly touch on the extraterritoriality issue. This was a virtual job fair, and the defendant was very clear that people would be able to participate from all over the world, and the intention here was, in fact, to participate from New York. So they sort of put themselves out here, and I would respectfully submit that that is not sufficient for an impact here. In terms of the actual evidence of discrimination, there's one other point, or a couple of other points I forgot to mention. It wasn't just cutting off communication. It was also being locked out of the system. So in other words, beforehand, and this is all in the record, beforehand, where we were able to sign into the system and post job listings, suddenly that lockout took place, and the defendant refused to respond to communication regarding what was going on. So I would submit that, looking at the facts here, I would submit, and also given that they say that they won't do business with Israeli entities, I would say it's, there's plenty, there's a reasonable basis in the record to say there really was discrimination going on here. So that's all I have to say. If the court has any questions, I can try to answer. Thank you very much, Mr. Abrams. Thank you. We will reserve decision and move to the next case.